# Potts *v.* Coleman.

*Statutory Action in nature of Ejectment.*

1. *Deed or muniment of title to part of land sued for.*—A deed, or power of attorney, is not incompetent as evidence, because it relates only to a part of the land sued for; nor because, after describing a part of the land, it adds the word *also*, followed by a blank.

2. *Possession of note as evidence of payment.*—The possession of a note by the maker, or the fact that it is found among his papers after his death, is presumptive evidence of its payment; and the principle extends to a note given for the purchase-money of land, in the possession of a sub-purchaser of the land, or found among his papers after his death.

3. *Deposition; when material part of cause or defense depends exclusively on witness.*—The deposition of a witness may be taken in civil cases (Code, § 2801, subd. 5); when affidavit is made that "a material

[Potts v. Coleman.]

part of the defense to the action depends exclusively on the evidence of said witness."

4. *Filing cross-interrogatories, as waiver of notice.*—Filing cross-interrogatories to a witness, without raising any objection as to notice of the time and place of taking the deposition, is an implied waiver of all objection on that account

5. *Testimony of witness as to contents of lost deed.*—A witness, testifying as to the contents of a lost deed, which he had seen and read, may be asked to "state the contents, or the substance of the contents thereof."

6. *Objections to deposition.*—When the deposition of a witness is taken on the ground that the defense, or a material part thereof, depends exclusively on his testimony, (Code § 2801, subd. 5), it will not be suppressed on motion because, at the time the application was made, and at the time of his examination, he was a resident of the county.

7. *Secondary evidence of lost deed.*—To justify the admission of secondary evidence of the contents of a lost deed, by the testimony of a witness who saw and read it in the possession of the grantee, there must be some proof of the genuineness of the document, or of the execution of such a deed.

APPEAL from the Circuit Court of Talladega.

Tried before the Hon. LEROY F. BOX.

This action was brought by Sumner A. Potts, Isaac Hudson and others, against Thomas H. Coleman, to recover the possession of a tract of land particularly described in the complaint; and was commenced on the 1st May, 1872. The tract of land contained 1116.85 acres, consisting of section fifteen (15), and parts of sections fourteen (14), eleven (11), and twenty-two (22), in township twenty (20), range three (3) east; but the defense was limited to about 700 acres of the tract, and a disclaimer was entered as to the residue. The plaintiffs sued as the heirs at law and descendants of Isaac Hudson, deceased, who died in Texas, intestate, on the 13th May, 1865; and whose only child, Edward M. Hudson, also died in Texas, intestate, on the 23d October, 1861, the plaintiffs being the sole heirs of each of them. On the trial, as the bill of exceptions shows, the plaintiffs introduced evidence tending to show that said Isaac Hudson was in possession of the land in 1845, under claim of ownership, and put his son (said Edward M.) in possession in 1849; that the son remained in possession until 1852, when he moved to another place, which his father had bought for him, "and then sold said tract to J. M. Roberts, on credit, taking notes for the purchase-money, and giving bond to make titles on payment of the purchase-money; that Roberts sold the land, two or three years afterwards, to J. H. Bradford and B. A. Smoot, who assumed the payment of the purchase-money; that Smoot occupied the land for

two or three years, and then released his interest to Brad-
ford, who afterwards sold the land to H. W. Coleman and
F. A. Butt; that H. W. Coleman died in possession, before
the commencement of this suit, and the defendant claims his
interest in the land; that Isaac Hudson and his son moved
to Texas in 1853, and there died as above stated. This was
the plaintiffs' title.

The defendant first offered in evidence, after proving its
execution, a power of attorney executed by Isaac Hudson to
M. M. Duncan, which was dated December 30th, 1859, and
contained these words: "I hereby authorize and empower
said attorney (Duncan) to make, or cause to be made in my
name, to H. W. Coleman and F. A. Butt, a warranty title
deed to the following lands, situated in Talladega county,
Alabama: section fifteen, township twenty, range three east;
also, —————————————; they being the lands sold by
E. M. Hudson to the said J. M. Roberts in 1852. By this
power of attorney, it is intended to confer upon the said
attorney (Duncan) as ample power to execute warranty
titles in fee simple to the above lands, as I myself have;
the said title to be made whenever the said parties pay to
said Duncan a promissory note for $5,000, made by J. M.
Roberts on October 25th, 1852, payable to Edward M. Hud-
son on the 1st January, 1863, with interest from 1st January,
1860, the interest on said note having been paid up to the
last named date." The plaintiffs objected to the admission
of this power of attorney as evidence, "because a blank space
of one line followed the word *also*, and it showed on its face
that it was not complete when it was signed, and did not
describe or include all the lands intended to be contained in
it." The court overruled the objections, and the plaintiffs
excepted. The defendant then offered in evidence a receipt
signed by Isaac Hudson, dated December 27th, 1859, for
$400 paid by H. W. Coleman and F. A. Butt, "for the ·
interest for 1859 on J. M. Roberts's note to E. M. Hudson
for $5,000;" and it was admitted without objection. He
next offered in evidence the said note of Roberts for $5,000,
having proved the signature to the note, and the fact that it
"was found among the papers of H. W. Coleman after his
death;" and this was offered "in connection with said power
of attorney." The plaintiffs objected and excepted to the
admission of the note as evidence. The plaintiffs offered in
evidence, in rebuttal, a note for $5,000, signed by H. W.
Coleman and F. A. Butt, dated November 1st, 1859, and

payable to Isaac Hudson, with interest payable on the
1st January, 1860, 1861, 1862 and 1863; and proved that
said note was found among the papers of said Hudson after
his death, and was in the handwriting of said M. M. Duncan,
who died in 1863.   The plaintiffs offered in evidence, also,
a deed for the partition of the lands by agreement between
said H. W. Coleman and Butt, which was signed by them,
dated May 6th, 1862; and which recited that they gave their
joint notes for $11,880 for the land, "and there has been paid
on said notes $4,400 jointly."    S. B. Glazener, a witness for
plaintiffs, who was acquainted with all the parties, and had
lived on the land, testified that, in January, 1864, he went
to H. W. Coleman's house on the land, for the purpose of
impressing his negroes into the service of the government;
when Coleman said, referring to the recent death of his son
in the army, "I am losing my children, you are taking my
negroes, and I can not pay for my land."

The defendant offered in evidence the deposition of J. M.
N. B. Nix, which had been taken on interrogatories and
cross-interrogatories.    The affidavit for taking the deposition,
which, as set out in the transcript, was made and subscribed
on the 4th September, 1863 [1883?], stated that said Nix
"is a material witness for the defendant in said cause, and
that a material part of the defense to said action depends
exclusively on the evidence of said witness."    The record
does not show when the direct interrogatories were filed, but
the notice to the plaintiffs' attorneys was issued on the
10th January, 1884, and served on the 12th January; and
cross-interrogatories were filed in time to be answered in
the deposition, which was taken on the 24th August, under
a commission issued on the 17th June, 1884.    The bill of
exceptions states in reference to it: "The clerk did not pre-
scribe any notice to be given to the plaintiffs or their
attorney, of the time and place of examination of the witness;
no notice of the time and place was given to them or their
attorney, and neither they nor their attorney attended said
examination."    Before entering on the trial, the plaintiffs
moved to suppress this deposition, (1) "because the affidavit
and the deposition show that the witness resided in Talladega
county, at the time the application was made for a commis-
sion, and at the time of his examination;" (2) "because the
affidavit does not show a sufficient ground for taking said
deposition;" and (3) "because the examination of the witness,
without notice to plaintiffs or their attorney, was illegal."
7

The court overruled the objections, and the plaintiffs excepted.

The 4th direct interrogatory to this witness was in these words: "State whether or not at any time Henry W. Coleman exhibited to you an instrument in writing purporting to convey the title to the land in controversy, or any part thereof, to any one; if yea, state when, as well as where, and under what circumstances; whether or not you read said instrument, and whether the same purported to be signed by any one; and what name or names, if any, were signed thereto; also, whether the name or names of any witnesses were subscribed thereto, and how many, and who they were, if you remember. State whether or not you now have a recollection of the contents, or the substance of the contents, of said instrument in writing; and if yea, state the contents, or. the substance of the contents thereof, as clearly and as fully as you can." At the time of filing cross-interrogatories, the plaintiffs objected to the latter part. of this interrogatory, because it calls for "the contents, or the substance of the contents" of the instrument, instead of "the words, or the substance of the words;" and they renewed their objection at the trial, duly excepting to the action of the court overruling it.

The answer of said witness to the 4th interrogatory was as follows: "Henry W. Coleman did at one time exhibit to me an instrument in writing, purporting to convey the title to a portion of the lands in controversy to him, Henry W. Coleman. I can not now state definitely what it was, but remember that it was at his own residence. He and I were old friends, and I was at his house taking dinner. He was rejoicing at having got the deed, and handed it to me in confirmation of what he said. I read said instrument at his special request. According to my best recollection, it was signed by Marcus M. Duncan, as agent for Isaac Hudson. I remember that there was subscribing witnesses to said instrument, but can not now remember their names. There were two names of subscribing witnesses, according to my best recollection; but, as before stated, I do not recollect who they were, nor whether I knew them. I have a recollection of the substance of the contents of said instrument in writing. The substance was an indenture between Isaac Hudson, by his agent, M. M. Duncan, and Henry W. Coleman and F. A. Butt; in consideration of a certain amount of money paid by Coleman and Butt, the amount of which I

[Potts v. Coleman.]

can not recollect, the said Isaac Hudson granted, bargained and sold the lands which are the subject-matter of this suit, to Henry W. Coleman and F. A. Butt; and my recollection is, that it was dated and signed, and witnessed as I have already stated; but I do not remember the date, nor the names of the witnesses." The same facts were stated by the witness, in substance, in answer to other interrogatories; and his answers to the several cross-interrogatories were not materially different. The plaintiffs objected to the admission of this answer "as evidence to prove either the former existence, the loss, or the contents of said deed," (1) "because the witness does not prove the execution of said instrument, or the handwriting of the said maker;" (2) "because he testified that there were names signed to said instrument, or purporting to be signed, by subscribing witnesses, whom he did not know, and whose names he did not remember;" (3) "because there was no evidence of the execution and identity of said supposed deed;" (4) "because there was no evidence of the previous existence, identity, or handwriting of the supposed witnesses;" and (5) "because there was no evidence before the court or jury of the *factum* of the supposed deed." The court overruled the several objections, and admitted the evidence; and the plaintiffs duly excepted. The defendant adduced evidence of fruitless search among the papers of his deceased father, for the alleged deed executed by Duncan as attorney for Isaac Hudson, when they found the note and the power of attorney above mentioned; and the court admitted this evidence against the objection and exception of the plaintiffs.

The several rulings of the court on the evidence, as above stated, are now assigned as error.

HEFLIN & BULGER, for appellants.

BISHOP & WHITSON, *contra.*

SOMERVILLE, J.—1. We can perceive no objection to the admissibility in evidence of the power of attorney made by Isaac Hudson to Duncan, bearing date December 30th, 1859. It relates to a part of the land in controversy, showing authority for its conveyance to the vendees whenever they paid the remainder of the purchase-money. Its relevancy was not destroyed or impaired by the fact that it did not embrace the entire tract.—*Green v. Jordan*, 83 Ala. 220.

2. The possession by H. W. Coleman of the first note due E. M. Hudson by Roberts was *prima facie* evidence of its payment, either by him or by the maker, in view of the fact that Coleman had purchased the lands upon which the note constituted a vendor's lien, and he was therefore as much interested in paying the debt as if he were the debtor. *Potts v. Coleman*, 67 Ala. 22. And the note being found among Coleman's papers after his death, was presumptively in his personal possession while living.—*Lipscomb v. De-Lemos*, 68 Ala. 592; 2 Whart. Ev. §§ 1363-64.

3. The affidavit was sufficient to authorize the taking of the deposition of the witness Nix. It alleged that "a material part of the defense to said action depends exclusively on the evidence of said witness." This is expressly made one of the statutory grounds for taking depositions to be used in civil cases.—Code, 1886, § 2801, sub-div. 5.

4. The plaintiffs' attorney having crossed the interrogatories propounded to Nix, without raising any objection as to notice of the time and place of taking the witness' deposition, he must be held to have impliedly waived such objection. To permit the objection to be raised at the trial, for the first time, would enable parties to experiment, at the expense of their antagonists, upon the testimony of witnesses, and thus often reap an unfair advantage.—*Aicardi v. Strang*, 38 Ala. 326; Code, 1886, § 2803.

5. It was no valid objection to certain interrogatories in the deposition, that they called for the *substance* of the contents of the deed alleged to have been lost. It was unnecessary to prove the words of the conveyance, and the answers of the witness satisfactorily showed the substance of a valid deed under the statute, with the requisite operative words of transfer—"granted, bargained and sold." "The proof of the contents of a lost paper", as said by Chief-Justice MARSHALL, in *Tayloe v. Riggs*, 1 Pet. 591, "ought to be such as to leave no reasonable doubt as to the *substantial parts* of the paper." We should say, in civil cases, the proof ought to be such as to furnish satisfactory evidence of its substantial parts.—*Shorter v. Sheppard*, 33 Ala. 648. Under the statute, any written instrument, signed by the grantor, or by an agent having written authority, "is effectual to transfer the legal title to the grantee, if such was the intention of the grantor, to be collected from the entire instrument."—Code, 1876, § 2948; *Webb v. Mullins*, 78 Ala. 111.

[Potts v. Coleman.]

6. The motion also to suppress, based on the fact that Nix was a resident of Talladega county at the time the deposition was taken, was equally untenable, in as much as the statute authorizes depositions of residents to be taken on the ground set out in the affidavit.—Code, 1886, § 2801, subdiv. 5. It is quite another matter that the deposition of a witness taken on this ground—viz., that "the defense, or a material part thereof, depends exclusively on his testimony"—is taken *de· bene esse*, and can not be introduced if the witness is shown to be alive, and to reside in the county at *the time of the trial.—Memphis & Charleston R. R. Co. v. Maples*, 63 Ala. 601. The motion to suppress was not predicated on this special ground, and was a waiver of other grounds. The court did not err in overruling it.—*Bartee v. James*, 33 Ala. 34.

7. We are unable, however, to resist the conclusion, that no sufficient predicate was laid for the introduction of secondary evidence of the contents of the alleged deed, which was a question addressed to the consideration of the court, and not of the jury. To justify such evidence, especially when exclusively oral, the following facts must be established to the satisfaction of the court: (1) the existence and execution of the original paper, as a genuine document; (2) the substance of its contents; (3) its loss, destruction, absence from the State, or other satisfactory reason for failure to produce the original, which may be shown by such diligent search for it as would raise a reasonable presumption of such loss or absence. The one of these facts is as necessary to be proved as the other, and the failure, therefore, to prove either is fatal to the right to introduce the secondary evidence. We find in the record no satisfactory evidence of the *genuineness* of the paper exhibited by Coleman to the witness Nix, which he claimed to be a deed from Hudson to himself and Butt, and purporting. to be executed by Duncan, as attorney in fact for the grantor. The execution of the paper is not established; and without this, the introduction of secondary evidence of the contents of the lost paper is unauthorized.—*Comer v. Hart*, 79 Ala. 389; *Singer Manf. Co. v. Riley*, 80 Ala. 314. Nix does not testify to the handwriting of Duncan, and no satisfactory evidence any where appears in the record as to the genuineness of Duncan's alleged signature. Every fact testified to by Nix might be true, and yet the paper exhibited to him by Coleman might have been a forgery, or, to say the least, not genuine. We

need not comment on the fact, that Nix was testifying as to a paper which he claimed to have seen more than twenty years before his examination. It is sufficient to say, that the opinion of the court is that, under the fundamental rules governing the admission of secondary evidence, the Circuit Court erred in admitting the contents of the alleged deed to be proved, without first requiring satisfactory evidence as to the existence of a genuine original executed by the grantor, or his written authority.

For this error, the judgment of the Circuit Court must be reversed, and the cause remanded.